**SPERTI PRODUCTS, INC., et al.,**
**Plaintiffs,**
**v.**
**The COCA–COLA COMPANY, Defendant.**
**Civ. A. No. 2700.**

United States District Court
D. Delaware.
Nov. 23, 1966.

Joseph A. Julian, Jr., DeLuca, Julian & Walsh, Wilmington, Del., William Schurtman, Shea, Gallop, Climenko & Gould, New York City, Stanley H. Foster, Yungblut, Melville, Strasser & Foster, Cincinnati, Ohio, of counsel, for plaintiffs.

Rodney M. Layton, Richards, Layton & Finger, Wilmington, Del., Paul L. Ahern, Wolfe, Hubbard, Voit & Osann, Chicago, Ill., of counsel, for defendant.

## OPINION

STEEL, District Judge.

Before the Court is the question of attorney-client and work product privilege. It arises as a result of the filing of cross-motions under Rule 34, and a motion to quash a *subpoena duces tecum* addressed to one of the plaintiffs. The documents which defendant seeks to have produced have been stamped 1 to 120; and those sought by plaintiffs have been marked in pencil 1 to 14. The identification and relationship of individuals and corporations whose names appear in the documents have been agreed to in a series of letters which have been docketed. The documents were submitted to the Court *in camera* with the understanding that rulings could be made upon the basis of the briefs without oral argument.

The problem of communications between a corporate officer or employee and an attorney who is a corporate employee which is usually so troublesome in the determination of attorney-client privilege, is not particularly acute in the instant case. Here, only a few communications of this kind are involved. They are between either an officer or employee of Union Carbide Corporation and Jackson B. Browning. Prior to 1960, Mr. Browning was Associate Patent Counsel and Assistant Manager of the Patent Department of Union Carbide. When the communications in question were written, Mr. Browning was a Vice President of Union Carbide Development Company, a division of Union Carbide Corporation. This fact, coupled with the contents of the communications themselves, demonstrates that he was not acting as a lawyer when the communications were written. These communications are, therefore, free from the attorney-client or work product privilege.

Most of the documents about which there is any real problem are between outside attorneys and their clients. Certain general principles are applicable to these:

1. A communication is privileged if written by a client to an outside attorney who is acting as a lawyer in connection with the communication. A communication from a client to an outside attorney, however, is not privileged if the attorney is not acting as a lawyer. Zenith Radio Corp. v. Radio Corp. of America, 121 F.Supp. 792, 794 (D.Del. 1954).

2. A communication from an outside attorney, acting as such, to a client is privileged if it is based upon or relates to information furnished by the client in connection with the performance of professional services by the attorney. It is not privileged if it is not written in a professional capacity, or if it is not based upon facts communicated by the client in connection with his professional employment. It is, therefore, not privileged if it is based solely upon public documents such as patents, statutes, decisional law, or information supplied by third parties, or sources other than the client's disclosures. United States v. United Shoe Machinery Corporation, 89 F.Supp. 357, 359 (D.Mass.1950); American Cynamid Co. v. Hercules Powder

Company, 211 F.Supp. 85, 90 (D.Del. 1962).

3. The major problem here is whether outside lawyers are acting as lawyers, or whether they are acting in a non-legal capacity, when representing their clients in connection with Patent Office matters, such as drafting claims, prosecuting patent applications, acting in connection with interference proceedings, and the like. In Zenith Radio Corp. v. Radio Corp. of America, supra, Judge Leahy said with respect to attorney-employees of a corporate patent department (121 F.Supp., p. 794):

> " * * * They do not 'act as lawyers' when not primarily engaged in legal activities; when largely concerned with technical aspects of a business or engineering character, or competitive consideration in their companies' constant race for patent proficiency, or the scope of public patents, or even the general application of patent law to developments of their companies and competitors; when making initial office preparatory determinations of patentability based on inventor's information, prior art, or legal tests for invention and novelty; when drafting or comparing patent specifications and claims; when preparing the application for letters patent or amendments thereto and prosecuting same in the Patent Office; when handling interference proceedings in the Patent Office concerning patent applications."

To this statement he appended footnote 1 which reads (p. 794):

> "These are not hallmark activities of attorneys. Patent solicitors, agents, and other non-lawyers may practice before the Patent Office. Any citizen although not an attorney may qualify for practice before the Patent Office. Admission for all is by special examination. 35 U.S.C.A. Appendix."

In American Cyanamid Company v. Hercules Powder Company, supra, Chief Judge Wright stated (211 F.Supp., p. 89) that he would follow the foregoing textual statement by Judge Leahy in Zenith. Obviously, Chief Judge Wright meant to limit his approval of Zenith to communications between corporate officers or employees and employee-attorneys, and not to extend it to communications between clients and outside attorneys. See 211 F.Supp. at p. 89, Note 20.

Since Zenith has stated that Patent Office activities "are not hallmark activities of attorneys," it can be argued this must be true regardless of whether they are carried on by corporate attorney-employees or by outside attorneys. In either case the nature of the work is the same.

Post-dating both Zenith and American Cyanamid Company is Sperry v. State of Florida, 373 U.S. 379, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963). There, the Florida Bar Association brought an action to enjoin Sperry, who was not a member of the Florida bar, from practicing before the Patent Office as an "agent". The Supreme Court of Florida held that under Florida law the preparation and prosecution of patent applications for others constituted the practice of the law and issued an injunction. The Supreme Court of the United States reversed. It held that under the "supremacy clause" of the United States Constitution Florida law could not limit Sperry's right to practice in the Patent Office since it was secured to him by Federal law. At p. 383 of 373 U.S., at p. 1325 of 83 S.Ct. the Court said:

> "We do not question the determination that under Florida law the preparation and prosecution of patent applications for others constitutes the practice of law. Greenough v. Tax Assessors, 331 U.S. 486 [67 S.Ct. 1400, 91 L.Ed. 1621]; Murdock v. [City of] Memphis, 20 Wall. 590 [22 L.Ed. 429]. Such conduct inevitably requires the practitioner to consider and advise his clients as to the patentability of their inventions under the statutory criteria, 35 U.S.C. §§ 101–103, 161, 171, as well as to consider the advisability of relying upon alternative forms of protection which may be available under state law. It also involves his participation in the drafting of the speci-

fication and claims of the patent application, 35 U.S.C. § 112, which this Court long ago noted 'constitute[s] one of the most difficult legal instruments to draw with accuracy,' Topliff v. Topliff, 145 U.S. 156, 171 [12 S.Ct. 825, 831, 36 L.Ed. 658]. And upon rejection of the application, the practitioner may also assist in the preparation of amendments, 37 CFR §§ 1.117–1.126, which frequently requires written argument to establish the patentability of the claimed invention under the applicable rules of law and in light of the prior art. 37 CFR § 1.119."

The plain implication, although obviously not the precise holding of Sperry v. State of Florida, is that Patent Office activities by a person duly qualified to practice in that office, constitutes one type of practicing law. An extension of *Zenith* to free from the cloak of privilege communication between clients and outside attorneys who represent them before the Patent Office cannot be squared with the views expressed in Sperry v. State of Florida.

In Chore-Time Equipment, Inc. v. Big Dutchman, Inc., 255 F.Supp. 1020 (W.D. Mich.1966), the Court held that communications between an outside patent attorney and his client relating to patent office proceedings were subject to the attorney-client privilege. This conclusion, particularly in the light of the views expressed in Sperry v. State of Florida, is eminently reasonable and is adopted.

The principles heretofore stated are the guide lines which will be used in determining which documents are protected by attorney-client privilege.

The principles stated in Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947) have been applied in determining those documents which are protected from disclosure because they are the work product of any attorney. These are relatively few: Plaintiffs' Nos. 48, 78–80, and Defendant's Nos. 7 and 8.

*Rulings*

All of the documents sought by defendant are privileged except (a) Nos. 40, 49, 59 and 81,[1] and (b), except the following which are not privileged: Nos. 13–15, 19, 22, 25, 30–33, 42–47, 53–55, 58, 63, 71, 74–76, 82–89, 91, 95–98, 101–107 (including 103(a)), 113, 114, 116 and 120.

The documents sought by defendant which are not privileged fall into one or more of the following categories:

Communications, including opinions, *from* plaintiffs' outside attorneys *to* plaintiffs which are not based upon information supplied by plaintiffs to their attorneys so far as is discernible directly or by inference. For the most part they are based upon public documents such as patents or statutes.

Communications pertinent to plaintiffs' legal matters between two firms of outside attorneys who represent plaintiffs where the communications are not based upon information supplied by plaintiffs.

Communications between plaintiffs' outside attorneys and parties other than plaintiffs.

Communications *from* plaintiffs *to* their outside attorneys on non-legal matters such as fixing a date for a conference. See document 74.

Communications between plaintiffs and Golden Gift, Inc.

Communications between Golden Gift, Inc. and its outside attorneys.

Communications between Golden Gift, Inc. and outside attorneys for plaintiffs.

Inter-company communications between officers or employees of the plaintiffs.

All of the documents sought by plaintiff are privileged except the following which are not privileged: those numbered in pencil 1–5 and 14. The non-

1. No ruling is made with respect to these because of insufficient data concerning their writer, addressee, or source. Pend- ing further information they will be held *in camera.*

privileged documents fall into the following categories:

Memo of Minute Maid to its file—not a communication. Union Carbide inter-office communications where (1) although between a non-lawyer and an attorney (J. B. Browning), the attorney is not acting as a lawyer, or (2) neither the writer nor the recipient is an attorney.